IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| DARIUS J. CURNEY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CASE NO. 5:11-CV-239-CAR-MSH |
| | * | 42 U.S.C. § 1983 |
| DAN BLAKELY, *et al.*, | * | |
| | * | |
| Defendants. | * | |

## REPORT AND RECOMMENDATION

On June 20, 2011, Plaintiff filed the above styled Section 1983 action. (ECF No. 1.) On January 30, 2012, the remaining[1] Defendants filed a Motion to Dismiss. (ECF No. 24.) Plaintiff was notified of his right to file a response and filed his response on February 10, 2012. (ECF No. 30.) For the reasons described below, Defendant's motion to dismiss should be granted.

## FACTUAL BACKGROUND

Plaintiff brought this action pursuant to 42 U.S.C. § 1983, which arises out of attacks he alleges occurred on January 9, 2011, and March 22, 2011, while Plaintiff was confined at Macon State Prison ("MSP"). (Pl.'s Compl. 4.) According to Plaintiff, the attack related to conflicts between him and what he asserts are certain "Muslim" inmates.

Plaintiff alleges that he was first attacked on January 9, 2011. He contends that Defendant Unit Manager Dan Blakely knew about the January 9th attack through a written statement he filed with Blakely. According to Plaintiff, Blakely nevertheless

---

[1] Several Defendants were dismissed form this action by Order of the Court on December 23, 2011. (ECF No. 21.)

transferred one of Plaintiff's attackers into Plaintiff's building on March 21, 2011, the day before Plaintiff's second attack.  (*Id.* at 10.)

Plaintiff's collective filings set forth in some detail the facts surrounding the March 22nd incident.  At approximately 1:15 p.m., Plaintiff told Defendant Floor Officer Spencer Alston that Muslim inmates had threatened him.  Alston responded that Plaintiff should write a statement.  In his statement, Plaintiff said he "was told by the Muslims in this dorm (F2) that if I don't pack my property and leave the dorm then they were going to kill me." (Pl.'s Compl. 9).  Alston told Plaintiff to wait by the "window" while Alston left the dorm to deliver Plaintiff's statement to supervisors.  Instead of remaining by the window as Alston instructed, Plaintiff decided to walk to the control room and inform the officer there of the situation.  En route, Plaintiff was allegedly attacked by what Plaintiff describes as numerous "Muslim" inmates and stabbed repeatedly.  (*Id.* at 5.)

## DISCUSSION

### I.  Standard on Motion to Dismiss

When considering a 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's complaint and limit its consideration to the pleadings and exhibits attached thereto.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  The complaint must include sufficient

factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Id.* Although the complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims, *id.* at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable,'" *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

## II.   Eleventh Amendment Immunity

As an initial matter, Defendants have asserted the defense of Eleventh Amendment immunity with regard to any claims made against them in their official capacity. (Mot. to Dismiss 6.) The Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. To determine whether a defendant is immune from liability under the Eleventh Amendment, the Eleventh Circuit Court of Appeals has held that "a defendant need not be labeled a 'state officer' or 'state official,' but instead need only be acting as an "arm of the State," which includes agents and instrumentalities of the State." *Manders v. Lee,* 338 F.3d 1304, 1308 (11th Cir. 2003). The *Manders* Court set out the four factor test used to ascertain whether an entity is an "arm of the State" in carrying out the function at issue: "(1) how state law defines the entity; (2) what degree of control the State maintains over

3

the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Manders,* 338 F.3d at 1309.

The United States Supreme Court has held that the Eleventh Amendment bars claims against a State or one of its agencies, "absent a waiver by the State or a valid congressional override," where the State is the real party in interest or when any monetary recovery would be paid out of state funds. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). The State of Georgia has not consented to being sued under 42 U.S.C. § 1983. The Defendants, who are employed by the State of Georgia, are "officials" of the State and, therefore, receive the protection of the Eleventh Amendment given to states. As such, they may not be sued for compensatory damages absent a waiver. Thus, Plaintiff's claims for compensatory damages against the Defendants in their official capacity must fail.

### III.    Qualified Immunity

Defendants also claim that Plaintiff's action should be dismissed because they are entitled to qualified immunity in their individual capacities. Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no clearly established right of which a reasonable person would have known. In sum, qualified immunity is a guarantee of fair warning. *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999). Specifically, "[t]he doctrine of qualified immunity provides that government officials performing discretionary functions generally are shielded from

4

liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir.2009) (internal quotation marks omitted). The first qualified immunity inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, the facts show that the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001) *overruled in part by Pearson v. Callahan,* 555 U.S. 223 (2009) (based on the circumstances of the particular case, the courts are now able to decide which of the two inquiries should be addressed first); *Seigert v. Gilley*, 500 U.S. 226, 232 (1991). The second qualified immunity question is whether the right violated was clearly established at the time of the alleged wrongful acts. *Id.* at 201. "The contours of the right must be sufficiently clear that a reasonable official would understand that he was doing violates that right." *Id.* If either element of the qualified immunity test is decided against the Plaintiff, the Defendant is entitled to qualified immunity.

The Eleventh Circuit has held that "[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028 (11th Cir.2001) (en banc). To prove such a violation, a plaintiff must show that (1) an objectively substantial risk of serious harm existed, (2) the defendant official was subjectively aware of that risk, (3) the official responded to the risk in an objectively unreasonable way, and (4) the official's disregard of the risk caused the plaintiff injury. *Id.* (citing Farmer v. Brennan, 511 U.S. 825, 834,

5

844–45, (1994). "The plaintiff must prove that the official had subjective knowledge of a risk of serious harm and disregarded that risk by conduct that constituted more than mere negligence. Deliberate indifference requires that the defendant deliberately disregard a strong likelihood rather than a mere possibility that the ... harm will occur." *D.S. ex rel. Stinson v. Cnty. of Montgomery, Ala.,* 286 F. App'x 629, 634 (11th Cir. 2008); see also *Gish v. Thomas*, 516 F.3d 952, 954 (11th Cir.2008) (quotation marks, citations, and brackets omitted) (emphasis added).

The Eleventh Circuit has further held that "[p]rison officials have a duty to protect prisoners from violence at the hands of other prisoners. It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety. As with a medical condition, a constitutional violation occurs when (1) the officers were aware of 'a substantial risk of serious harm' and (2) did 'not respond reasonably.'" *Woody v. Chronic,* 401 F. App'x 509 (11th Cir. 2010) (internal citations and alterations omitted). In this case, as stated above, Plaintiff asserts that he was initially assaulted on January 9, 2011, by unknown attackers. (Pl.'s Compl. 4.) He contends that he was escorted to Flint River Hospital for treatment of his injuries. (*Id.*) Thereafter, on March 21, 2011, Defendant Blakely, the Unit Manager, moved "the Muslim inmate who [Plaintiff] learned was one of the ones who assaulted [him] on 1-9-11 to the building [Plaintiff] was currently housed in." (Pl.'s Compl. 5.) He asserts that Defendant Blakely was deliberately indifferent because he was aware of the first attack and asked Blakely not to let him back on the compound until

6

the attackers were identified.  The next day, March 22, 2011, Plaintiff alleges he told Defendant Alston that he had been threatened by certain Muslim inmates.  (Pl.'s Compl. 4.)  Defendant Alston told him to draft a written statement about the threats, which Plaintiff did.  (*Id.*)  Plaintiff asserts that Defendant Alston then told him to wait by the window and left the dorm with the statement.  (*Id.*)  At that point, Plaintiff left the window "to inform the control room officer" and was attacked and stabbed by several inmates who he claims were "Muslim."  (*Id.*)  Plaintiff contends that he was "taken to disciplinary court for the altercation." (Pl.'s Compl. 5.)

Plaintiff further claims that Blakely wrote him up in a disciplinary report arising out of the March 22nd incident and "sentenced me inappropriately for allegations I didn't commit."  (*Id.*)  Plaintiff was allegedly placed in solitary confinement from March 23 to July 19, 2011.  Plaintiff claims he was kept in solitary beyond his sentence and denied basic necessities, including medical care for his injuries.  Among additional allegations against Blakely, Plaintiff claims Blakely directed another officer to douse Plaintiff with pepper spray and had Plaintiff transferred from MSP to TSP, both in retaliation for Plaintiff's filing grievances and the instant lawsuit.  (*Id.*)

The facts as alleged by Plaintiff fail to show that any the rights guaranteed to him through the United States Constitution were violated by the Defendants in their handling of the threats made against him and the subsequent attacks by other inmates.  As to Defendant Alston, the facts reveal that after receiving the written statement regarding the threats made against Plaintiff, Defendant Alston told him to wait "by the window" and

7

left to ensure the statement was put into the proper administrative hands. Thus, Alston's actions, even were they deemed to be negligent, do not rise to the level of deliberate indifference. There is no evidence that Defendant Alston was aware of the initial attack, and the facts reveal that he specifically told Plaintiff to remain "by the window" until he returned from submitting Plaintiff's statement regarding the threats by Muslim inmates.

As to Defendant Blakely, Plaintiff states that Blakely knew of the threat to him and was aware of the identity of the January 9, 2011, attackers when he moved the Muslim inmate into Plaintiff's cell the day before the attack. He bases that fact on a statement he says he submitted to Blakely concerning the attack. The statement, however, fails to identify any specific attacker and could not have put Blakely on notice of the source of any potential threat, much less the identity of those who might attack Plaintiff.

Plaintiff has not shown that any of his constitutional rights were violated. Therefore, no further analysis is required. As such, Defendants are entitled to summary judgment as to any claims made against them in their individual capacities.

## IV.     Failure to Exhaust Administrative Remedy

Defendants also argue that Plaintiff's complaint should be dismissed for his failure to exhaust the grievance procedure available at the prison. (Mot. to Dismiss Br. 2, ECF No. 24.) Pursuant to the Prisoner Litigation Reform Act ("PLRA"), Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, the United States Supreme Court has held that an inmate must fully and properly exhaust all available administrative remedies before he can file a Section 1983 lawsuit in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). The court has no discretion to waive the exhaustion requirement in the event a claim has not been fully and properly exhausted prior to filing. *See Alexander v. Hawk*, 159 F.3d 1321, 1325-26 (11th Cir. 1998); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"). "Proper" exhaustion requires a prisoner to comply with the specific prison grievance procedural requirements. *See Woodford*, 548 U.S. at 95. In addition, an inmate must "provide with his grievance all relevant information reasonably available to him." Because "failure to exhaust is an affirmative defense under the PLRA, . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. However, a complaint may still be dismissed pursuant to the PLRA "if an affirmative defense, such as failure to exhaust, appears on the face of the complaint." *Anderson v. Donald*, 261 F. App'x 254, 255 (11th Cir. 2008). Satisfaction of the exhaustion requirement is a precondition to filing a lawsuit, and therefore exhaustion must be accomplished before the suit is filed.

9

*McDaniel v. Crosby*, 194 F. App'x 610, 613 (11th Cir. 2006) (per curiam) (citing *Alexander*, 159 F.3d at 1325-26). Requiring exhaustion prior to filing "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204.

The Eleventh Circuit has addressed the proper form of a pretrial motion challenging a plaintiff's failure to exhaust his administrative remedies, holding:

> Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."

*Bryant v. Rich,* 530 F.3d 1368, 1374-75 (11th Cir. 2008) (quoting *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988)). Defendant therefore properly raised his exhaustion defense in an unenumerated Rule 12 motion to dismiss. *See id.* at 1375. When motions to dismiss are based on issues not enumerated under Rule 12(b), such as the instant case, Federal Rules of Civil Procedure Rule 43(c) governs and "permits courts to hear evidence outside of the record on affidavits submitted by the parties." *Id.* at 1377 n.16. Thus, as Defendants have done here, the parties may submit documentary evidence concerning the exhaustion issue and doing so will not require the conversion of the motion to dismiss into a summary judgment motion. In addition, the judge may resolve factual questions concerning a plaintiff's alleged failure to exhaust nonjudicial remedies, "so long as the factual disputes

do not decide the merits and the parties have sufficient opportunity to develop a record." *Id.* at 1376 (footnote omitted).

Shortly after its decision in *Bryant*, the court developed a two-step process to assist courts in deciding a motion to dismiss for failure to exhaust administrative remedies. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). Specifically, the court held:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. . . . If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies. Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*Id.* at 1082-83 (internal citations omitted); *see also Williams v. Marshall*, 319 F. App'x 764, 767 (11th Cir. 2008) (per curiam). Defendants, however, "bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Turner*, 541 F.3d at 1082.

Defendants in the instant case contend that Plaintiff failed to exhaust the prison's grievance procedure with respect to his claims. In support of this contention, Defendants provided the affidavit of John Hill, the Chief Counselor and Grievance Coordinator at Macon State Prison. (Hill Aff., Jan. 30, 2012; ECF No. 24-2.) Counselor Hill stated that

11

all inmates are notified of the grievance procedure upon entry to Macon State Prison by being provided a copy of the Orientation Handbook for Offenders and through verbal instructions. (*Id.* at ¶ 6.) In his affidavit, Counselor Hill states that he has reviewed the grievances filed by Plaintiff while he was incarcerated at the Macon State Prison. (*Id.* at 14.) Relevant to the time frame in this case, Plaintiff filed an informal grievance on January 10, 2011, stating that he was assaulted and transported to Flint River Hospital where he was diagnosed with a concussion but not observed over the next twenty-four hours, and denied medical care once he was returned to the prison. (*Id.* at ¶ 15.) That grievance was resolved. (*Id.*) Then, Plaintiff filed an informal grievance on March 23, 2011, in which he contended that he was stabbed 23 times and that Defendant Alston failed to protect him. (*Id.* at ¶ 20.) On April 15, 2011, Plaintiff filed a formal grievance as to the same set of facts. (*Id.*) On May 18, 2011, Plaintiff appealed the denial of his formal grievance. (*Id.*) Plaintiff then filed this case on June 20, 2011, prior to a ruling on his appeal.

As stated above, when considering a 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's complaint and limit its consideration to the pleadings and exhibits attached thereto. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In this case, it is more than apparent that Plaintiff did not fully exhaust his available administrative remedies before filing the current lawsuit. Despite being apprised of his right to respond and refute or rebut Defendants' contention in this regard, Plaintiff has failed to do so. As such, Defendants are entitled to a dismissal of this action.

## CONCLUSION

WHEREFORE, IT IS HEREBY RECOMMENDED that Defendant's Motion to Dismiss be GRANTED for reasons explained above. Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff may file objections to this Recommendation in writing with the United States District Judge within FOURTEEN (14) days after being served with a copy hereof.

SO Recommended, this 10th day of April, 2012.

S/ STEPHEN HYLES
UNITED STATES MAGISTRATE JUDGE